UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CAUSE NO.: 2:07-cv-304-TS |
| BAYER HEALTHCARE, LLC, et al., | ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Motion to Enter Proposed Consent Decree [DE 8], filed by the government on October 26, 2007. The motion is unopposed by the approximately thirty Defendants in this action. The State of Indiana, an Intervenor Plaintiff, also does not oppose the Motion.

**BACKGROUND**

**A.     Procedural Background**

On September 7, 2007, the government filed a Complaint [DE 1] against approximately thirty defendants under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601–9675. The civil complaint sought injunctive relief and recovery of costs relating to the continuing cleanup of the "Himco dump" – named for the operator of the site, Defendant Himco Waste Away Service, Inc. (Himco) – in and adjacent to Elkhart, Indiana. On the same date, the government filed a Notice of Lodging of Proposed Consent Decree [DE 2], with the draft consent decree attached as an exhibit.

On September 10, 2007, the State of Indiana filed an unopposed Motion to Intervene [DE

3] so it could recover its costs related to the Himco dump. The Court granted [DE 5] the unopposed Motion on September 11, 2007, and the State then filed an Intervenor Complaint [DE 6] on September 13, 2007, followed by an Amended Intervenor Complaint [DE 7] on September 20, 2007.

On October 26, the government, joined by Intervenor State of Indiana, filed an Unopposed Motion to Enter Proposed Consent Decree [DE 8], along with a Memorandum of Law [DE 9] in support of the motion.

**B.     Factual Background**

**1.     *Chronology***

The Himco dump occupies about 60 acres of marshland in and adjacent to Elkhart, Indiana. From 1960 to 1976, the dump accepted medical, pharmaceutical, and industrial waste. The waste was dumped into grassy and marshland areas without any liner or collection system, or it was buried. The main customer of the dump was Miles Laboratories, Inc. (Miles), which is now called Bayer corporation (Bayer), another Defendant in this case. The State of Indiana closed the dump in 1976 after local residents complained about problems with their well water.

Subsequent investigation by the EPA found that the dump was contaminated with hazardous substances such as aluminum, arsenic, barium, chromium, lead, nickel, and zinc, as well as organic compounds such as acetone, benzene, chloroethane, and phenol. In 1989, the EPA began a "remedial investigation and feasibility study ("RI/FS")," (DE 9, 3; Memo. in Spt. of Unopposed Mot. to Enter Consent Decree). Groundwater testing in 1990 found high levels of the hazardous substances sodium and manganese. Also in 1990, the dump was listed on the

"National Priority List," a national list of priorities for government response under CERCLA based on the relative risk of danger to public health, welfare, or the environment. The EPA that year also entered into an administrative order with Himco, which consented to conduct an emergency removal of drums that had been buried at the dump and were leaking waste.

In 1991, Himco, Miles, and the City of Elkhart began providing municipal water service to replace the use of well water for some residents in the area. After continued testing and investigation, the EPA issued a "record of decision" (ROD) in 1993 and an amended record of decision in September 2004. The 2004 decision represents the EPA's decision about what kind of cleanup and other activities must occur at the site, including soil cover over waste and providing for bottled water to some residents. The EPA continued testing at the Himco dump, investigating those involved, and then began identifying other customers who sent waste to the site. That investigation led to the current proposed consent decree before the Court.

**2.**     *Consent Decree Details*

The consent decree is an agreement between the government and the Defendants to forego litigation and instead embark on a schedule of payments and activities to clean up the Himco site at an estimated cost of $9,156,000. In the decree, the Defendants agree to clean up the site and/or pay the EPA for past and future costs associated with clean up, investigation, and oversight of the matter.  The defendants are divided into several groups: the Performing Settling Defendants, Bayer and Himco; and the Cashout Settling Defendants, various companies and their successors (Exhibit D of the ROD lists twenty-nine) who sent waste to the site over the years.

3

Key specific terms of the consent decree are:

– Defendants Bayer and Himco, as the performing Defendants, will hire contractors to implement EPA's 2004 ROD, that is, to cleanup and remedy the Himco dump site in accordance with the EPA's findings and decisions, including soil cover and removal, water supply hookup, a gas collection system, and other activities. (Consent Decree, VI; DE 9, 4, Govt. Memo. in Support of Unopposed Mot. to Enter Proposed Consent Decree)

– Defendants Bayer and Himco, as the performing Defendants, will pay all of the EPA's future costs, that is, all costs incurred from August 16, 2005 to the date of the entry of the decree, including reimbursement of the EPA's costs in overseeing the clean up work at the site. (Consent Decree, XVI, 55(a); DE 9, 5, Govt. Memo. in Support of Unopposed Mot. to Enter Proposed Consent Decree)

– Defendants Bayer and Himco, as the performing Defendants, will reimburse the State of Indiana for the State's future response costs associated with the site. (Consent Decree, XVI, 54(d); DE 9, 5, Govt. Memo. in Support of Unopposed Mot. to Enter Proposed Consent Decree)

– Bayer Corporation, which is the corporate parent of Defendant Bayer Healthcare but not a defendant itself, will sign a separate performance guarantee in the amount of $12 million to ensure completion of the work. (Consent Decree Section XIII; DE 9, 3–4, Govt. Memo. in Support of Unopposed Mot. to Enter Proposed Consent Decree).

– Defendant Himco will reimburse the EPA $600,000 for past costs in three installments plus interest. (Consent Decree, XVI, 54(b); DE 9, 5 Govt. Memo. in Support of Unopposed Mot. to Enter Proposed Consent Decree)

– Defendant Bayer and the cashout Settling Defendants will reimburse the EPA $3,875,000 for past costs, with the cashout settling Defendants paying a total of $2,600,000. (Consent Decree, XVI, 54(a); DE 9, 4, Govt. Memo. in Support of Unopposed Mot. to Enter Proposed Consent Decree)

– Defendant Bayer and the cashout Settling Defendants will reimburse the State of Indiana $28,348.15 for past costs. (Consent Decree, XVI, 54(a); DE 9, 5, Govt. Memo. in Support of Unopposed Mot. to Enter Proposed Consent Decree)

– In return for the payments outlined above and compliance with the rest of the decree, the federal and state governments agree not to sue the Defendants for liability and payment under CERCLA (Consent Decree, XXI, 83(a), (b))

– The Defendants also get the benefit of CERCLA's protection from contribution liability for matters addressed in the consent decree. (Consent Decree, XXIII, 94, citing 42 U.S.C. § 9613(f)(2))

4

> – The Defendants are subject to monetary penalties of a stipulated amount for failing to meet the requirements and deadlines of the consent decree. (Consent Decree, XX)

Additionally, the Court retains subject matter jurisdiction over the consent decree and the Defendants while the Defendants comply with the decree's provisions, and the parties may seek "further order, direction, and relief" from the Court, including dispute resolution. (Consent Decree, XXVIII)

## STANDARD OF REVIEW

A court's review of a consent decree is not a mechanical rubberstamp, but neither is it a de novo review. *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990). Instead, the court gives deference to the agency and its work in fashioning the decree with the agreement of the other parties. *See id; see also United States v. Fort James Operating Co.*, 313 F. Supp 2d 902, 907 (E.D. Wis. 2004); *United States v. BP Exploration & Oil Co.*, 167 F. Supp 2d 1045, 1050 (N.D. Ind. 2001). This is especially the case when numerous parties "with sharply conflicting interests . . . and represented by knowledgeable lawyers[] have hammered out an agreement at arm's length." *Cannons*, 899 F.2d at 84. "[T]he desirability of encouraging out-of-court settlements . . . create[s] a presumption in favor of approving the settlement." *Donovan v. Robbins*, 752 F.2d 1170, 1177 (7th Cir. 1985), *quoted in Cannons*, 899 F.2d at 84. The agreement does not have to be "one which the court itself might have fashioned, or considers as ideal." *Cannons*, 899 F.2d at 84.

The particular standard is that the consent decree be "fair, reasonable, and faithful to the objectives of the government statute." *Id.* The fairness requirement includes both procedural and substantive fairness. *Id.* at 86; *United States v. BP Amoco Oil PLC*, 277 F.3d 1012, 1018 (8th

5

Cir. 2002).

## ANALYSIS

**A.  Procedural Fairness**

A court measures procedural fairness by examining the candor, openness, and bargaining balance in the negotiation process. *Cannons*, 899 F.2d at 86. The EPA's involvement with the Himco dump is longstanding and public. The 1993 ROD, and amended ROD of 2004, both public documents, laid out the EPA's decision about cleanup of the site. There is no information from the Defendants or elsewhere that tends to contravene the government's statement that the settlement resulted "after extensive, arms length negotiations conducted in good faith by the parties" or that "[e]xperienced counsel for the various defendants met and communicated frequently with each other and with counsel for the government, on both substantive and drafting issues." (DE 9, 9; Govt. Memo. in Supp. of Unopposed Mot. to Enter Proposed Consent Decree). The government states that the Defendants mostly led the effort to apportion costs for the cleanup, and there is nothing to suggest this is not the case. Moreover, in the absence of contradictory information, the Court assumes that named counsel for each Defendant, or in-house counsel for Defendants, advised their clients of their rights, responsibilities, potential liability, and ultimately whether to join the consent decree with the government. There is no indication that any of the parties were forced or strong-armed into the proposed decree.

There is no known opposition from non-parties, such as residents who live near the site or other interested persons or groups. In accordance with CERCLA, 42 U.S.C. § 9622(d), the government published notice of the lodging of this proposed consent decree in the federal

register. *See* Notice of Lodging of Consent Decree Under Cercla, 72 Fed. Reg. 53,795 (Sept. 20, 2007). The government states that no public comments were received during the 30-day comment period. The proposed deal also received local media attention. *See Cleanup in Sight for Former Landfill*, South Bend Tribune, October 13, 2007, at B5; Bridget Levitz, *Landfill cleanup plan OK'd*, The Truth (Elkhart, Ind.), October 2, 2007, http://www.elkharttruth.com/Know/News/Story.aspx?id=424191; Ed Ernstes, *Agreement Brings Elkhart Closer to Cleanup of Himco Dump Site*, WSBT, October 2, 2007, http://www.wsbt.com/news/local/10185136.html. The media coverage did not include any opposition or objection to the proposal, nor does it seem to have prompted any criticism.

Accordingly, the Court finds that the consent decree and its formation are procedurally fair in that the process has been public, open, and transparent, and the parties conducted their negotiations fairly, competently, and without undue pressure.

**B.     Substantive Fairness**

The requirement of substantive fairness involves "corrective justice and accountability: a party should bear the cost of the harm for which it is legally responsible." *Cannons*, 899 F.2d at 87. The Seventh Circuit, ruling on consent decrees in other areas of law, has listed several factors for district courts to consider:

> a comparison of the strengths of the plaintiff's case versus the amount of the settlement offer; the likley complexity, length, and expense of the litigation; the amount of opposition to the settlement among affected parties; the opinion of competent counsel; and, the state of the proceedings and the amount of discovery already undertaken at the time of settlement.

*EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). The first factor is the most important. *Id.*

The obligations of the Defendants under the proposed consent decree are not uniform but instead reflect their role with and activity involving the dump site over the years. The two performing settling defendants, Himco and Bayer, will pay the most costs because they, respectively, operated the waste site and dumped the most material there. The cashout settling defendants, who contributed lesser amounts of waste to the site over the years, pay a smaller amount that will be individualized based on the volume from each defendant and other factors.

The settlement offer is that the Defendants pay the $9,000,000 cost of the cleanup, so there is no concern that taxpayers will have to pick up the tab for the environmental problems. There is every indication the Plaintiff's case is strong; the government states the EPA has been investigating the site and those involved for many years and it identified the relevant parties through a variety of means. The settlement avoids the need for litigation, which in environmental cases tends to be complex, lengthy and expensive for all parties. As noted above, there is no known opposition to the settlement. Counsel for the government and the Defendants are presumed to be competent, so their clients' agreement to the proposal indicates that counsel has a good opinion of the consent decree. Last, there is no suggestion that this is not a good point in the proceedings for a consent decree. In sum, all the known information points to a consent decree whose terms are substantively fair.

**C.    Reasonableness**

The reasonableness requirement is "a multifaceted exercise" that tends to focus on the agreement's effectiveness, whether it "satisfactorily compensates the public for the actual (and anticipated) costs," and "the relative strengths of the parties' litigating positions." *Cannons*, 899

F.2d at 89–90. The proposed consent decree appears to be eminently reasonable for many of the reasons relating to substantive fairness. It will be effective in that it will provide for the cleanup of the entire site, which will benefit nearby residents. The cleanup will be paid for by those responsible for the problem, according to their individual roles. As noted above, nothing indicates that the government is giving up repayment from the Defendants at the taxpayers' expense.

### D.     Fidelity to CERCLA

> CERCLA has several goals.
>
> First, Congress intended that the federal government be immediately given the tools necessary for a prompt and effective response to the problems of national magnitude resulting from hazardous waste disposal. Second, Congress intended that those responsible for problems caused by the disposal of chemical poisons bear the costs and responsibility for remedying the harmful conditions they created.

*Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1081 (1st Cir. 1986), *quoted in Cannons*, 899 F.2d at 91; *Sidney S. Arst Co v. Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 420 (7th Cir. 1994); *United States v. Fort James Operating Co.*, 313 F. Supp 2d 902, 911 (E.D. Wis. 2004). Related to the first goal, settlements are preferred in CERCLA actions. *Fort James*, 313 F. Supp 2d at 911 (collecting cases).

This consent decree, as the government states, resolves all pending CERCLA claims involving the Himco dump site after many years of environmental damage, local concern, and government action, and it will bring about cleanup at the site and water service for some nearby residents. This accords with the first goal. As for the second goal, the Defendants are picking up the tab according to their various roles at the site, so no further taxpayer appropriations will be

9

needed. Last, this agreement avoids lengthy and expensive litigation. For these reasons, the Court finds that the consent decree is faithful to the purposes of CERCLA.

## CONCLUSION

Therefore, the Court GRANTS the Motion to Enter the Proposed Consent Decree [DE 8]. The Clerk is ordered to enter judgment in accordance with the terms of the Consent Decree.

SO ORDERED on November 28, 2007.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION